AUGUST BERESHEIM, Guardian, Appellant, v. WILLIAM ARND, County Treasurer, and Another Case.

Collection of Taxes: *Statutes retroactive except as to penalty* Code, section 1374, provides that when property subject to taxation is withheld, overlooked, or for any reason is not listed and assessed, the county treasurer at any time within five years shall demand of the person by whom it should have been listed the amount such. property should have been taxed, and on failure to pay the same within a certain length of time, shall cause an action to be brought therefor with a penalty. *Held,* that such statute was retroactive, except so far as the penalty was concerned, and authorized the treasurer to collect taxes on property not assessed before the act took effect, within the period of limitations.

*Interest of treasurer on account of per cent. allowed for collection.* Code, section 490, awards a county treasurer a commission of three-fourths of one per cent. on all money collected by him as taxes due any city or town, and 3 per cent. on all other taxes collected. Paragraph 5, fixes the maximum of his compensation, and requires payment of all excess into the county treasury. *Held,* that section 1374, authorizing an assessment of unlisted property, was not invalid on the ground that the county treasurer had a direct pecuniary interest in swelling the tax roll, and that his act was a *quasi* judicial one, since the treasurer can only collect the tax in an action at law, and the fees will probably go to the county.

CONSTITUTIONALITY: *Title of statute.* Acts Twenty-eighth General Assembly chapter 50, is entitled "An act to authorize boards of supervisors to provide for the discovery of property withheld from taxation, and to list the same and to collect taxes thereon, and to legalize contracts heretofore made for that purpose by boards of supervisors on certain conditions", and authorizes the county treasurer to "assess property so omit-

ted.''    *Held,* that the statute was not unconstitutional, as containing a subject not expressed in its title, in that the assessment of taxes is not authorized by the title, which provides for ''listing.''

WHAT IS SUFFICIENT ASSESSMENT.    The treasurer's acts in placing
2    omitted property on the roll under such section is a sufficient
   assessment thereof.

*Notice to taxpayer.*    Such assessment is not invalid on the ground
2    that no notice is given to the taxpayer or opportunity afforded
   him for a hearing.

*Appeal from Pottawattamie District Court.*—HON. O. D. WHEELER, Judge.

SATURDAY, MAY 17, 1902.

PLAINTIFF, in this proceeding, seeks to have annulled assessments made upon the moneys and credits of his ward under section 1374, Code 1897, and chapter 50, Acts Twenty-eighth General Assembly. The district court held that the assessments for the years 1896 and 1897 were invalid, and it confirmed the assessments for the years 1898, 1899, 1900. Both parties appeal, but we shall recognize defendant as appellant.—*Affirmed.*

*W. H. Killpack* for appellant.

*Harl & McCabe* for appellee.

WATERMAN, J.—The appeals in these cases present the same issues which were determined by this court in the case of *Galusha v. Wendt,* 114 Iowa, 597. It is true that many new arguments are made on behalf of the taxpayer, but the matters tendered for our solution are the same as those passed upon in the case mentioned. In the *Galusha Case* we held that section 1374, Code 1897, was retrospective, in so far as to permit the assessment of taxes for years previous to its passage, but that the provision relating to the

imposition of a penalty could not be applied to property omitted from assessment before the act took effect. It is now urged on behalf of the taxpayer that this construction is incorrect; that such an interpretation should have been given the law as would have sustained all of its terms, and, inasmuch as the penalty can only be applied to assessments made for years following its passage, therefore only such assessments should be made. Quite a number of authorities are cited, announcing general rules of statutory construction, with which we are entirely in accord. Sutherland Statutory Construction, sections 234, 235, 240, 325; *Atkins v. Disintegrating Co.*, 85 U. S. 272 (21 L. Ed. 841); *State v. Roby*, 142 Ind. 168 (41 N. E. Rep. 145, 33 L. R. A. 213, 51 Am. St. Rep. 174). But it must be remembered we have, in our construction of this statute, merely restricted it in part, and in an incidental part at that. We do not declare any part invalid, but only limit the application of the penalty. What was the main purpose of this act? Not to impose a penalty, clearly. That was but a method of enforcing such purpose. The general assembly had in mind that a vast amount of property, especially that which was in the form of moneys and credits, was escaping its just burden of taxation,—that it had escaped in past years. The purpose of the act was to bring it to light, and get it upon the tax books. It seems reasonable to think that body would wish, not only to reach forward, but also backward as far as the period of limitation would permit. We thought the language of the act justified us in imputing this intent to the general assembly, and the fact that the penalty sought to be imposed, with reference to taxes which should have been assessed before the act took effect, cannot be made effective, ought not to be enough to justify us in balking this manifest purpose.

It is further argued that the Code of 1897 revised the scheme of taxation and imposed new duties on the taxpay-

er. It is true that section 803, Code 1873, provides that the taxpayer "shall assist the assessor in listing all property," etc., while section 1312 of the present Code makes it the duty of such person "to list for the assessor all property," etc. But we regard this change as rather one of phraseology than of principle. In each case the duty was imposed on the taxpayer to make known his property. One who permitted the assessor to list his property at much less than its real assessable value, through an omission to divulge moneys and credits, certainly did not "assist the assessor" in making up the tax roll. We cannot see that the authorities cited by plaintiff on this point in any way aid his case. *Washington County v. Miller*, 14 Iowa, 584; *Marion County v. Kruidenier*, 72 Iowa, 92.

II. It is next argued that an assessment is necessary before there is any obligation to pay the tax, and the act of the treasurer in putting omitted property on the rolls under section 1374 is not an assessment, and, if intended to be such, it is invalid, because no notice is given the taxpayer, and no opportunity afforded him for a hearing. All of these matters were discussed at such length in the *Galusha Case* that we do not think it profitable to again go over the grounds there stated. We are satisfied with the conclusions reached in that case on these issues, and with the reasons given in their support. See, also, *Lambe v. McCormick*, 116 Iowa, —.

III. It is further urged that section 1374 is invalid because the county treasurer, who lists the property, has a direct pecuniary interest in swelling the amount of the tax roll. This argument is founded upon the provisions of section 490, Code 1897. That section awards the county treasurer a commission of three-fourths of 1 per cent. on all money collected by him as taxes due any city or town, and 3 per cent. of all other taxes collected. Paragraph 5 of that section, however, fixes the

maximum of his compensation, and requires him to pay any excess over that amount into the county treasury. It is not shown in this case that a single county treasurer in the state fell below the maximum compensation allowed him, without regard to fees from these omitted assessments. If that is the fact, such officer would in no way be benefited by the fees awarded. Speaking from a somewhat extended observation, we think we can safely say the emoluments of all county treasurers had reached the legal limit before an assessment was made under section 1374. The general assembly, doubtless, had this in mind when the section was adopted. The rule, however, it is said, is that a law is to be tested, not by what is done under it, but by what may be done. *Lake Shore & M. S. R'y Co. v. Smith*, 173 U. S. 684 (19 Sup. Ct. Rep. 565, 43 L. Ed. 858); *Stuart v. Palmer*, 74 N. Y. 183 (30 Am. Rep. 289). But does not this mean what may presently be accomplished under the terms of the law, and not what may happen in the future, under a change of conditions which there is no reason to anticipate? It is true, if conditions were to change, and the value of property decrease, the fees of a county treasurer might be so much diminished as that he would be interested in securing those allowed for assessments made under this section. But that situation is improbable, if not impossible. We do not feel called upon to annul a solemn act of the general assembly for purely speculative reasons; and, if we may express an opinion in advance upon such a case, we should say that it would be much wiser to hold the treasurer not entitled to fees for assessments made and collected under section 1374 than to declare that provision wholly void.

We know that making an assessment is held to be a *quasi* judicial function. *Clark v. Norton*, 49 N. Y. 243; *Stewart v. Case*, 53 Minn. 62 (54 N. W. Rep. 938, 39 A. M. St. Rep. 575); *Barhyte v. Shepherd*, 35 N. Y. 238; *Baker v. Allen*, 21 Pick. 382; Cooley, Taxation, 786. And that

it is a general principle of law that a judge may not be
the arbiter of his own controversy, nor pass upon matters
in which he is interested. Cooley, Constitutional Limita-
tions, 174. But how far are those principles to be ex-
tended? May an assessor not value and assess his own
property? Or may not a property owner act as assessor?
If we carry the theory of plaintiff to its logical conclusion,
only non-property owners are eligible to that office. This
precise question was before the supreme court of Ohio,
arising under statutes in many respects similar to those
under consideration. That court held that the auditor,
who performed the duties with us imposed on the
treasurer, was not disqualified from acting because he re-
ceived a per cent. upon the tax collected, and that the as-
sessment was not. invalid on that account. The court in
substance says the objection made that a man cannot be a
judge in his own case is not applicable. The auditor is
not a judge, and he has no case. Besides, almost every
officer in the state, judicial and ministerial, is interested
directly or indirectly in the result of the duties he per-
forms. *Probasco v. Raine*, 50 Ohio, 378 (34 N. E. Rep.
536). It is true, when a federal question was raised under
that act, and its validity denied on the ground that the
provisions violated the fourteenth amendment to the Con-
stitution of the United States, in depriving citizens of
their property without due process of law, it was held by
the federal courts in that state that, the auditor being an
interested party and the assessment a judicial act, it was
void for those reasons, and could not be enforced. *Mey-
ers v. Shields* (C. C.) (61 Fed. Rep. 713); *Brinkerhoff v.
Brumfield* (C. C.) (94 Fed. Rep. 422). While some of the
arguments used by the state court are perhaps not apt,
we are inclined to agree with its conclusions; but, were
we disposed to adopt the reasoning of the federal tribu-
nals, we should still have to say that our statute is to be
distinguished from the Ohio law in two important partic-

ulars. In the latter, the auditor had a power of distraint to enforce the collection of the tax he imposed. With us the treasurer must go into court, and in the action all rights of the taxpayer will be protected. Second. The fee there was certain. Here it does not go now to the treasurer, and in all human probability never will do so. On the whole, we are of opinion this point is not well taken.

IV. Finally, it is strongly insisted that chapter 50, Acts Twenty-eighth General Assembly, is in conflict with section 29, art. 3, of the constitution, which reads as follows: "Every act shall embrace but one subject and matters properly connected therewith, which subject shall be embraced in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Chapter 50 gives to boards of supervisors the authority to contract with private persons for the discovery of property not listed for taxation, fixes the maximum of compensation that may be allowed, requires a bond from such agents, provides for notice by the treasurer to the property owner before listing the property, makes disposition of the taxes recovered, and validates contracts theretofore made for the discovery of omitted property. The title of the act is in these words: "An act to authorize boards of supervisors to provide for the discovery of property withheld from taxation, and to list the same and collect taxes thereon; and to legalize contracts heretofore made for that purpose by boards of supervisors upon certain conditions." The act is additional to chapter 2, title 7, of the Code, relating to the collection of taxes, and all its provisions have direct reference to that subject. The intention of the constitutional provision prohibiting more than one subject being embraced in a bill is to prevent the union in the same act of incongruous matter. But it is the unity of object

which is to be looked for in the ultimate purpose to be attained, and not in the details for accomplishing such purpose. *State v. County Judge of Davis County*, 2 Iowa, 280. An act providing for "revising and consolidating the laws and incorporating the city of Dubuque and establishing a city court therein" was held not to embrace more than one subject. *Davis v. Woolnough*, 9 Iowa, 104. See, also, *Santo v. State*, 2 Iowa, 165 (63 Am. Dec. 487); *State v. Schroeder*, 51 Iowa, 197; *Martin v. Blattner*, 68 Iowa, 286; *Christie v. Investment Co.*, 82 Iowa, 360; *Richman v. Supervisors*, 77 Iowa, 513.

But it is said a part of the subject-matter viz, the assessment, is not embraced in the title, which speaks of "listing" the property, and that listing and assessing are two very different matters. It is true, the words "list" and "assess" are used in the chapter relating to taxation in a somewhat different sense, but always as a part of the same process of getting the property upon the tax roll. In section 1374, to which this act is additional, the words listing and assessment are used in the sense mentioned. The objection is purely technical, for the title of the act says, "to list and collect taxes thereon" and surely this phrase includes an assessment. Titles of legislative acts are to be liberally construed. *Shooting Club v. Lamoreaux*,— Wis. — (89 N. W. Rep. 880). In that case the court says: "It has been repeatedly held that the title of an act should be liberally construed; that it should not be condemned as insufficient to constitutionally suggest those things found in the body of the act, unless, giving thereto the largest scope which reason will permit, something is found therein which is neither within its literal meaning, or its spirit, nor germane thereto. Courts cannot sit in judgment upon the work of the legislature, and decide one of its acts unconstitutional, merely because the title thereto is not as comprehensive as it might have been made. * * * Any number of provisions, all relating to a single object, includ-

ing all the necessary or reasonable details thereof, may be covered by a title in such general terms as to fairly indicate such subject; the unity of the subject being taken as including within its scope all the details provided to effect the single legislative purpose." See, also, to the same effect, *In re Mayer*, 50 N. Y. 504; *Connor v. Railroad Co.*, 23 S. C. 427; *Town of Mahomet v. Quackenbusch*, 117 U. S. 508 (6 Sup. Ct. Rep. 858, 29 L. Ed. 982).

Our conclusion is that the trial court erred in not confirming the assessments for the years 1896 and 1897, and awarding judgment therefor. MODIFIED in that way, the judgment entered will be AFFIRMED.